UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KATHLEEN ANN FOWLER,

           Plaintiff,

     v.

CALIFORNIA HIGHWAY PATROL, et al.,

           Defendants.

Case No. 13-cv-01026-TEH

**ORDER GRANTING DEFENDANTS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT**

       This matter came before the Court on March 31, 2014, on the motion of Defendants California Highway Patrol ("CHP") and CHP Officer Daniel Frederick ("Officer Frederick") (collectively, "Defendants") for partial summary judgment. After carefully reviewing the parties' written and oral arguments, and with the benefit of supplemental briefing, the Court GRANTS Defendants' motion for the reasons set forth below.

# I.  BACKGROUND

       Plaintiff Kathy Fowler ("Plaintiff" or "Fowler") alleges, *inter alia*, that Officer Frederick unlawfully arrested her for public intoxication and for willfully resisting, delaying, or obstructing Officer Frederick during the course of his investigative stop of a vehicle in which she was a passenger. Officer Frederick is a 15-year veteran of the CHP, and is based in the CHP area that patrols Lake County, California. Ex. A, Frederick Dep. 6:12-14; 7:9-20.[1] On October 20, 2011, Officer Frederick, while driving on State Route 29 in a marked patrol car, observed a Chevrolet Volt being driven by Fritz Henshaw ("Henshaw"), a companion of Fowler, who was a passenger in the vehicle. Second Amended Complaint ("SAC"), ¶¶ 1, 14, Docket No. 30. Henshaw was driving Fowler

---

[1]     All references to "Ex." refer to Defendants' exhibits submitted in support of summary judgment. Plaintiff's exhibits are referred to as "Pl.'s Ex."

United States District Court
Northern District of California

back from a restaurant where they each had dinner and two glasses of wine over the course of three hours.  Ex. C, Henshaw Dep. 37:18-23.  Officer Frederick testified that he first became suspicious that Henshaw might be under the influence when he observed that the vehicle pulled forward from an intersection, began to turn right, and "suddenly jerked" back forward, such that "it appeared to [him] that either [the driver] changed his mind about making the right turn and decided to continue northbound on [State Route] 29 or he did not have proper control of the vehicle and it turned without his desire to."  Ex. A, Frederick Dep. 15:4-22.  Officer Frederick believed this action constituted an unsafe turning movement, in violation of California Vehicle Code section 22107[2], which prompted him to begin a DUI investigation by following the vehicle.  *Id.* 15:12-16:5, 45:1-16.  After Officer Frederick began following Henshaw, he observed him move "from the right side of the lane all the way to the left side of the lane and then back to the right side of the lane."  *Id.* 16:14-17:1.  He did not remember how many times the vehicle touched the painted lines on both sides of the roadway, but he concluded that he observed an unsafe turning movement and weaving.  *Id.* 45:1-16.

Plaintiff contests whether Henshaw made an unsafe turning movement and was weaving.  Henshaw testified that he did not remember ever weaving, lurching, or crossing the center line or the right edge or any fog lines while driving, and found that possibility "unlikely" and "impossible."  Pl.'s Ex. 3, Henshaw Dep. 80:25-81:14.  Henshaw disagreed with Officer Frederick's statements in his arrest report that he observed the vehicle lurch, weave to the right, and then continue forward, and testified that "I don't see how that could have happened, but I don't know where this supposedly observing it happen[ed]."  *Id.* 82:2-11.  At the same time, Henshaw also offered testimony that supports Officer

---

[2]      Section 22107 provides that "[n]o person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided in this chapter in the event any other vehicle may be affected by the movement."  It "proscribes unsafe lateral movements" and "by its express terms . . . applies to *any movement* to the left or right from a direct course . . . ."  *People v. Thompson*, 79 Cal. App. 4th 40, 61 (2000) (emphasis in original).

2

Frederick's account.  While Henshaw did not "agree" with Officer Frederick's arrest report, which stated that Henshaw "allowed the vehicle to drive onto the right roadway edge line several times . . . and drove on the left roadway edge line," *id*. 82:18-83:7, Henshaw "can't say that it's wrong, because I – you know, my recollection is, I was driving just fine.  I was talking to somebody.  So that is a possibility that that's – not that many times.  I – I could see once, you know, from a distraction, but not several times." *Id*. Henshaw was talking to Ken Fowler about recent doctors' visits for Plaintiff on his speakerphone, which may have also caused his concentration to be affected slightly so that he may not have been "driving perfectly down the center of the road at all times." *Id*. 57:6-13.  Henshaw also acknowledged that he was driving an unfamiliar car "for the first time," which affected his perception of how to center the vehicle in the lane. *Id*. 57:14-24. Ultimately, Henshaw agreed that he could have hit the white lane lines: "if I had to testify in court, could I have, yeah, I could have, because I was talking, you know, my mind was talking [to] Ken [Fowler] about the visits of the day and everything like that." *Id*.  57:24-58:2.

Henshaw's driving was recorded on Officer Frederick's patrol car's Mobile Video Audio Recording System ("MVARS") recording for several minutes prior to the stop.  Ex. B.  The quality of the video is grainy; it does not record the "lurch" at the intersection, and does not irrefutably show that the vehicle crossed the lane lines.  During his deposition, Officer Frederick testified that he believed the video appeared to show Henshaw hit the lane lines, but acknowledged that he could not tell, could "barely see the car," and noted that the lens of the camera is not physically located in the same position where he sits; he also stated that his actual view is much clearer in person.  Ex. A. Frederick Dep. 146:13-148:16.  Nonetheless, Officer Frederick "decided that [he] was going to make a traffic stop based on what [he] had seen." *Id*. 16:22-17:1.

Officer Frederick pulled Henshaw over, and Henshaw admitted that both he and Fowler had been drinking.  Ex. C, Henshaw Dep. 37:18-23.  While Officer Frederick was performing field sobriety tests with Henshaw, Fowler opened the passenger's side car

3

United States District Court
Northern District of California

1    door.  Ex. B, MVARS Video (6:47).  Officer Frederick broke away from speaking with

2    Henshaw and approached Fowler, who was seated in the passenger seat of the vehicle,

3    with her feet outside of the vehicle, and began to speak with her.  *Id.* (7:25); Ex. A,

4    Frederick Dep. 50:24-51:7.  Officer Frederick explained that Fowler needed to remain in

5    the vehicle, but Fowler apparently wanted to get out to return a cell phone call regarding

6    holiday plans.  Ex. D, Fowler Dep. 49:2-25, 50:24-51:2.  Officer Frederick testified that he

7    "walked up and asked [Fowler] to stay in the vehicle, and she told me that she didn't want

8    to, in essence; I told her that, in essence, you have to stay in the vehicle . . . ."  Ex. A,

9    Frederick Dep. 51:12-15.  Henshaw testified that he heard Officer Frederick "probably two

10   to three times, ask Fowler to stay in the car."  Ex. C, Henshaw Dep. 40:15-18.  The

11   MVARS video shows that Officer Frederick approached Fowler while she was in the

12   vehicle and spoke to her for at least twenty five seconds before she exited the vehicle,

13   although the recording does not capture what was said.  Ex. B, MVARS Video (7:30-

14   7:56); Ex. C, Henshaw Dep. 40:23-24; Ex. A, Frederick Dep. 51:15-16.

15       Fowler then exited the vehicle.  Ex. B, MVARS Video (7:50).  She walked toward

16   Officer Frederick, then backed away and leaned her back against the vehicle while Officer

17   Frederick continued to speak with her.  *Id.* (7:50-7:56).  Officer Frederick testified that

18   after he told Fowler to get back into the vehicle, she refused, and asked Officer Frederick

19   "what [he] was going to do about it."  Ex. A, Frederick Dep. 68:13-16.  Henshaw testified

20   that he heard Officer Frederick tell Fowler "get back in the car, repeatedly, one after

21   another, probably three times.  At the end of that third time, I think, is when he restrained

22   her."  Ex. C, Henshaw Dep. 93:9-11.  Officer Frederick testified, upon reviewing the

23   MVARS video, that approximately seven or eight seconds elapsed between when Fowler

24   exited the vehicle and refused to re-enter, despite his multiple instructions to "get back in

25   the vehicle."  Pl.'s Ex. 2 (Part #1), Frederick Dep. 233:23-235:5; Ex. B, MVARS Video

26   (7:50-7:56).

27       Plaintiff presents no evidence that Fowler disputes that Officer Frederick told her to

28   get back into the vehicle.  Rather, Fowler herself acknowledged that she could not testify

4

about what Officer Frederick said to her:

> Q: Do you remember the CHP officer coming over to speak
> with you after you'd opened the door?
> A: I don't remember whether I was talking with my friend, and
> he was looking at me, or did he come over to me, or – I felt
> that I had already left, and I walked towards the water, not very
> far but walked.  That was how I got – and maybe he said
> something.  I didn't hear it.

Ex. D, Fowler Dep. 51:8-15; *id.* 54:8:11 (". . . then I stood up. And then I looked toward it, and that's when he said something . . . and that's when I didn't hear what he said."); *see also* Pl.'s Ex. 5, Fowler Dep. 44:13 (Q: Do you remember if you said anything to the officer? A: My – personally?  Q: Yeah.  A: I know he said something, but I didn't quite know.  He was back, and I was over here.  I couldn't figure out what it was.  So I didn't do anything.  So why would he want to talk with me because he was working with him. That's how my brain was working.").   Fowler's expression that she "didn't hear" Officer Frederick may mean that Fowler did not understand what Officer Frederick said.  Henshaw testified that once Officer Frederick began to restrain Fowler, Henshaw yelled to Officer Frederick that "[s]he doesn't understand your instructions.  She has had a stroke."  Ex. C., Henshaw Dep. 47:5-16.

Officer Frederick testified that he believed taking physical control of Fowler at that time was the safest option:

> Q: And why do you believe it was the safest?
> A: Because in my mind she heard me tell her to get back in the
> car; she told me no, she wouldn't get back in the car.  She
> asked me what I was going to do about it.  She refused to
> comply.  At this point she knows what I want from her, to get
> back in the car, and she's not doing it.  So now her safety, Mr.
> Henshaw's safety, my safety, they're all being compromised.
> So taking her under control and with the intent of putting her in
> the back of my car where she could calm down and I could go
> back to the D.U.I. investigation was the safest route that I
> could see.

Ex. A, Frederick Dep. 68:4-25.

Officer Frederick grabbed Fowler's arms, placed them behind her back, and began escorting her back to the patrol car.  Ex. B, MVARS Video (7:56-8:05).  Fowler broke free from Officer Frederick and attempted to run forward, but Officer Frederick continued

United States District Court
Northern District of California

holding her right hand behind her back. *Id.* (8:05-8:09). Officer Frederick steered her against the side of the passenger's side of the vehicle; as she faced the vehicle, she stretched her left arm and leg out and yelled, although the recording does not indicate what she said. *Id.* (8:10-8:32). Officer Frederick motioned for Henshaw to return to the driver's seat of the vehicle, which he did. *Id.* (8:30). Officer Frederick then placed her hands behind her back, but did not handcuff her, and attempted to escort her to the patrol car, which was parked several feet behind the vehicle. The MVARS recording shows that as Officer Frederick walked Fowler back to his patrol car, she regained control of her right hand and ran forward shortly before both she and Officer Frederick left the field of vision of the MVARS recording. *Id.* (8:32-8:47). As they approached the patrol car's rear door, Officer Frederick testified that he let go of her with one of his hands to open the door, at which point Fowler ran away from the patrol car toward the edge of the roadway, eventually stepping over the edge of an embankment. Ex. A, Frederick Dep. 76:17-77:5, 78:1-11. Because Officer Frederick still held onto Fowler with one arm, he prevented her from falling all the way down. *Id.* 77:5-7, 79:10-25. Plaintiff testified that she did not fall down, but rather that Officer Frederick threw her to the ground. Pl.'s Ex. 5, Fowler Dep. 123:22-124:1.[3] Officer Frederick opened the patrol car's back door, and over the course of approximately one minute and thirty seconds, he repeatedly told Fowler to get into the patrol car, eventually handcuffed her, and placed her in back of patrol car. Ex. B, MVARS (9:00-10:27).

Officer Frederick subsequently completed the DUI investigation of Henshaw, determined that he was not intoxicated, and summoned paramedics to evaluate Fowler. Pl.'s Ex. 1 at 4-5; *see generally* Ex. B, MVARS video. An ambulance took Fowler to the local emergency room for evaluation. Pl.'s Ex. 1 at 4-5; SAC ¶ 24. Fowler was arrested for violating California Penal Code section 148(a)(1)[4], which makes it a misdemeanor to

---

[3] This factual dispute is relevant to the excessive force claim, but is not material to the instant motion for summary judgment on the unlawful arrest claims.

[4] Penal Code section 148(a)(1) provides:

United States District Court
Northern District of California

willfully resist, delay, or obstruct a police officer's attempt to discharge a duty of his employment.  Pl.'s Ex. 1 at 5 (Arrest Report).  Fowler was also arrested for violating California Penal Code section 647(f)[5], which is a misdemeanor described colloquially as "public intoxication."  Pl.'s Ex. 1 at 5 (Arrest Report); Ex. A, Frederick Dep. 279:20-25.

Another officer tested Fowler with a "preliminary alcohol screening device" and found her blood alcohol content was .052 and .048 at 22:00 and 20:01 hours.  Pl.'s Ex. 1 at 5; Ex. A, Frederick Dep. 216:24-217:8.  Fowler was released from the hospital, taken to jail, and later returned home.  Ex. C, Henshaw Dep. 26:6-10, 62:6-19.  The Lake County district attorney later dismissed the charges against Fowler.  SAC ¶ 31.

Plaintiff contends there are also numerous disputed facts related to whether Officer Frederick used excessive force in restraining Fowler, including whether he threw her to the ground and whether she attempted to fight with him.  Opp'n at 7-9.  As these disputed facts relate to the excessive force claims, which are not at issue in Defendants' summary judgment motion, they do not create a genuine issue of material fact with respect to the Court's summary judgment analysis here.

---

Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

Cal. Penal Code § 148(a)(1).

[5] Penal Code section 647(f) provides that a person is guilty of misdemeanor "disorderly conduct" under the following circumstances:

[the person is] found in any public place under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, controlled substance, or toluene, in a condition that he or she is unable to exercise care for his or her own safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, or toluene, interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way.

Cal. Penal Code § 647(f).

7

United States District Court
Northern District of California

## II.     LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.* The Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party.  *Id.* at 255.  The Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that "demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007).  However, on an issue for which its opponents will have the burden of proof at trial, the moving party can prevail merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case."  *Celotex,* 477 U.S. at 325.  If the moving party meets its initial burden, the opposing party must set out specific facts that establish a genuine dispute for trial to defeat the motion.  Fed. R. Civ. P. 56(c)(1); *Anderson,* 477 U.S. at 256.

A court need consider only the materials cited by the parties.  Fed. R. Civ. P. 56(c)(3).  A district court has no independent duty "to scour the record in search of a genuine issue of triable fact" and may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks omitted); *see also Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1031 (9th Cir. 2001) (same).

8

United States District Court
Northern District of California

## III.    DISCUSSION

Defendants move for summary judgment on the basis that: (A) Officer Frederick is entitled to qualified immunity for the unlawful arrest claims in the First Cause of Action, 42 U.S.C. § 1983 (hereinafter "§ 1983"); (B) Officer Frederick is entitled to immunity pursuant to California Penal Code section 847(b)(1) with respect to the unlawful arrest claim in the Third Cause of Action, under the Bane Act, California Civil Code section 52.1; (C) Plaintiff has failed to plead and prove a defamation claim and has no evidence of special damages stemming from reputational harm arising from her allegedly unlawful arrest; and (D) the negligent employment and hiring claims against the CHP fail as a matter of law.  For the reasons discussed below, Defendants are entitled to summary judgment on these claims.[6]

### A.    The Court Grants Summary Judgment to Officer Frederick on Plaintiff's Unlawful Arrest Claims as Alleged in the First Cause of Action Because Officer Frederick Is Entitled to Qualified Immunity.

Plaintiff alleges in her First Cause of Action that Officer Frederick violated her Fourth Amendment rights by unlawfully placing her under arrest.  *See* SAC ¶¶ 32-42. Officer Frederick argues that he is entitled to qualified immunity because probable cause existed to arrest Plaintiff for refusing to remain in and return to the vehicle during the DUI investigation of Henshaw and for public intoxication.  Plaintiff argues that disputed material facts relating to the legality of the underlying vehicle stop preclude granting qualified immunity to Officer Frederick on summary judgment.  For the reasons discussed below, Officer Frederick is entitled to qualified immunity on the § 1983 unlawful arrest claims, and thus is entitled to summary judgment on the First Cause of Action.

Qualified immunity "protects government officials 'from liability for civil damages

---

[6] Defendants do not move for summary judgment on the excessive force claims in the Second Cause of Action pursuant to § 1983 and the Third Cause of Action pursuant to California Civil Code section 52.1, the battery claim in the Fourth Cause of Action, or the remaining negligence claims in the Fifth Cause of Action, identified at SAC ¶¶ 69(a)-(d). These claims are unaffected by the Court's summary judgment ruling.

United States District Court
Northern District of California

1    insofar as their conduct does not violate clearly established statutory or constitutional

2    rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S.

3    223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  It "shield[s] an

4    officer from personal liability when an officer reasonably believes that his or her conduct

5    complies with the law." *Id.* at 244.  A government official is entitled to qualified

6    immunity unless the official's (1) conduct violated a constitutional right and (2) that right

7    was clearly established at the time of the violation.  *See id.* at 232.  The Court may grant

8    qualified immunity on either prong without addressing the other, such that the Court may

9    grant "qualified immunity on the ground that a purported right was not 'clearly

10   established' by prior case law, without resolving the often more difficult question whether

11   the purported right exists at all." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (citing

12   *Pearson*, 555 U.S. at 227).  A right is "clearly established" if it is "sufficiently clear that

13   every reasonable official would have understood that what he is doing violates that right.

14   In other words, existing precedent must have placed the statutory or constitutional question

15   beyond debate." *Id.* at 2093 (citation and quotation marks omitted).  While there need not

16   be a "case directly on point," *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011), the

17   plaintiff nonetheless "bears the burden of proving that the rights she claims were 'clearly

18   established' at the time of the alleged violation." *Moran v. Washington*, 147 F.3d 839, 844

19   (9th Cir. 1998) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)).

20         "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth

21   Amendment, provided the arrest was without probable cause or other justification."

22   *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001).  "Probable

23   cause exists when, under the totality of the circumstances known to the arresting officers

24   (or within the knowledge of the other officers at the scene), a prudent person would believe

25   the suspect had committed a crime." *Id.* at 966.  "[P]robable cause means 'fair

26   probability,' not certainty or even a preponderance of the evidence." *United States v.

27   Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 246

28   (1983)).  The probable cause inquiry is an objective one, focusing on the facts known to

1   the officer at the scene.  *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[a police

2   officer's] subjective reason for making the arrest need not be the criminal offense as to

3   which the known facts provide probable cause"); *Tatum v. City & Cnty. of San Francisco*,

4   441 F.3d 1090, 1094 (9th Cir. 2006) ("If the facts known to an arresting officer are

5   sufficient to create probable cause, the arrest is lawful, regardless of the officer's

6   subjective reasons for it.").

### 1.   Because probable cause existed to arrest Plaintiff under California Penal Code section 148(a)(1) for willfully resisting, delaying, or obstructing Officer Frederick, he did not violate Plaintiff's constitutional rights.

10  Plaintiff was arrested for a violation of California Penal Code section 148(a)(1),

11  which punishes any person who "willfully resists, delays, or obstructs any . . .  peace

12  officer . . . in the discharge or attempt to discharge any duty of his or her office or

13  employment . . . ."  Cal. Penal Code § 148(a)(1).  While often referred to as "resisting

14  arrest," Penal Code section 148(a)(1)'s "statutory prohibition is much broader."  *Hooper v.*

15  *Cnty. of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011).  For a conviction under Penal

16  Code section 148(a)(1) to be valid, the defendant must have resisted, delayed, or

17  obstructed a police officer in the "lawful exercise of his or her duties.  The lawfulness of

18  the officer's conduct is an essential element of the offense under § 148(a)(1)."  *Id.*

19  Officer Frederick committed no constitutional violation by arresting Fowler for

20  violating Penal Code section 148(a)(1) because he had probable cause to believe that her

21  refusal to remain in or return to the vehicle was unlawful when he could have reasonably

22  believed that she had no lawful right to walk on the side of the freeway.  California

23  Vehicle Code section 21960 ("section 21960") prohibits pedestrians from walking on

24  freeways when adequate signage provides notice that the Department of Transportation or

25  local authorities have restricted pedestrian access by order, ordinance, or resolution.[7]

---

27  [7]   Section 21960 provides:

28  The Department of Transportation and local authorities, by order, ordinance, or resolution, with respect to freeways, expressways, or designated portions

11

Section 21960 contains an exemption that allows a driver or passenger to walk on a freeway to seek assistance or repair of a disabled vehicle. *Id*. This prohibition is "effective when appropriate signs giving notice thereof are erected upon any freeway or expressway and the approaches thereto." *Id*. § 21960(b). A pedestrian, as used in section 21960, is defined as a "person who is afoot." *Id*. § 467. Thus, section 21960 would give a reasonable officer the belief that a person could not be "afoot" outside of a car stopped on a freeway, unless the statutory exemption applied.

Here, Defendants have presented evidence that the particular portion of State Route 29 in which the vehicle stop occurred is a freeway. Ex. W, Fowler Dep. 59:6-10 ("Q: So is highway 29 a freeway or a highway? A: The point that we made this traffic stop, where our vehicles are stopped, is a freeway."). Pursuant to section 21960, the portion of the freeway in which the vehicle stop occurred has "Pedestrians Prohibited" signs giving notice of section 21960's prohibition on walking on the freeway. Ex. R., Dye Decl. ¶ 1 & Ex. A (attaching photograph of "Pedestrians Prohibited" sign on the northbound onramp to State Route 29 from Lakeport Boulevard, near Lakeport, California). Plaintiff concedes that a "sign provides notice." *Id*. at 4. Officer Frederick testified that he knew that walking on the freeway was illegal: "it is illegal for people to get out of their vehicles on the freeway barring certain exemptions that mostly regard with what's reasonable, such as your vehicle broke down, you need to walk to an exit and get help. But a generalization would be a passenger getting out of the car on a freeway is illegal." Ex. W, Fowler Dep. 58:23-59:5. Plaintiff, however, argues that she was not a pedestrian because she was standing, not walking, outside of the vehicle. The MVARS video, however, shows that

thereof under their respective jurisdictions, to which vehicle access is completely or partially controlled, may prohibit or restrict the use of the freeways, expressways, or any portion thereof by pedestrians . . . Notwithstanding any provisions of any order, ordinance, or resolution to the contrary, the driver or passengers of a disabled vehicle stopped on a freeway or expressway may walk to the nearest exit, in either direction, on that side of the freeway or expressway upon which the vehicle is disabled, from which telephone or motor vehicle repair services are available.

Cal. Veh. Code § 21960(a).

Plaintiff was "afoot" at the point that she exited the vehicle and walked around outside of the vehicle, even if the movement was confined to a relatively limited space. *See* Ex. B (7:47-7:50). Thus, Plaintiff falls within the meaning of section 21960's prohibition on pedestrians walking on freeways.[8]

Additionally, Plaintiff contends that Defendants failed to meet their burden of production because they raised the applicability of section 21960 in their reply brief. The Court, however, ordered supplemental briefing on this argument, and afforded Plaintiff an opportunity to respond and present evidence in opposition, which Plaintiff did. *See* Docket Nos. 68, 70. While Plaintiff argued in opposition that Defendants did not show that the Department of Transportation or relevant local authorities have passed an order, ordinance, or resolution deeming this section of State Route 29 to be a pedestrian-restricted freeway, Plaintiff did not offer evidence sufficient to create a genuine dispute of material fact that would undermine an officer's reasonable belief – based on the signage – that this section of State Route 29 was a freeway for which pedestrian access was prohibited (i.e. evidence indicating that the Department of Transportation or local authorities never prohibited pedestrian access to the portion of State Route 29 in question). Lastly, Plaintiff presented evidence that one of the "Pedestrian Prohibited" signs near this portion of the freeway appears new while others appear weathered. Opp'n at 2-5 & Pl.'s Exs. B-3, B-4, B-5. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat summary judgment; "there must be evidence on

_____

[8] Plaintiff's citation to *People v. Ramirez*, 140 Cal. App. 4th 849, 854 (2006), for the proposition that Officer Frederick did not have probable cause to arrest Plaintiff as a pedestrian is inapposite. In that case, the California Court of Appeal rejected the contention that California Vehicle Code section 21954(a) – which requires that "[e]very pedestrian upon a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway so near as to constitute an immediate hazard" – provided probable cause to arrest an individual who crossed the street when no cars but the police cruiser were present because the individual could not have created an immediate hazard by failing to yield to a non-existent car or the police cruiser. Here, Officer Frederick relies on section 21960 – a different provision of the Vehicle Code – not as an independent basis for arrest, but as a reason for ordering her to remain in and return to the vehicle. Probable cause existed for her arrest under Penal Code section 148(a)(1) when she refused to obey this lawful order and thus refrain from violating section 21960.

1    which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

2    Plaintiff does not present more than a scintilla of evidence showing that these signs did not

3    exist at the time of the arrest, or otherwise showing that a genuine dispute of material fact

4    existed as to whether there was a fair probability that a reasonable officer would believe

5    pedestrians were prohibited from walking on this portion of State Route 29.

6         A prudent person in Officer Frederick's position would therefore believe that, under

7    the totality of the circumstances known to him, there was a fair probability that Plaintiff, as

8    a pedestrian, had no legal right to be afoot on the side of State Route 29, which Officer

9    Frederick knew to be a freeway and which had "Pedestrians Prohibited" signs providing

10   notice to that effect.  Thus, Officer Frederick, in an attempt to discharge his duties as a

11   CHP officer, could lawfully order Plaintiff to refrain from walking on the freeway.  Cal.

12   Penal Code § 148(a)(1).  Officer Frederick broke away from his DUI investigation of

13   Henshaw to tell Plaintiff to remain in the vehicle.  Once Fowler refused his order and

14   exited the vehicle, she became a pedestrian on the freeway, in violation of section 21960.

15   At the point that Plaintiff walked out of the vehicle and refused to return to it, an objective

16   officer, under the totality of circumstances, could conclude there was a fair probability that

17   she willfully resisted, delayed, and obstructed Officer Frederick's attempt to discharge his

18   duties.  Thus, Officer Frederick had probable cause to arrest Plaintiff for a violation of

19   Penal Code section 148(a)(1).

20        Contrary to Plaintiff's assertion that there are "disputed material facts" with respect

21   to whether Plaintiff refused to comply with Officer Frederick's orders, Plaintiff fails to

22   present *evidence* establishing such a dispute.  First, Plaintiff contends that "there is a

23   dispute as to what was actually said at the point when Officer Frederick approached

24   Fowler," and that "we do not know" if he told her to get off the phone, remain seated, or

25   requested her to shut the door.  Opp'n at 16.  Plaintiff, however, fails to present any

26   *evidence* that would establish a genuine dispute of material fact on this point.  Officer

27   Frederick testified that he walked up to Plaintiff, asked her to remain in the vehicle; she

28   said she did not want to, and he repeatedly told to stay seated.  Henshaw testified that

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1    Officer Frederick asked her two to three times to stay in the car.  Officer Frederick testified

2    that once she exited the vehicle, he told her to get back into the vehicle, but she refused

3    and asked Officer Frederick what he was going to do about it.  Henshaw testified that that

4    he heard Officer Frederick tell Fowler "get back in the car, repeatedly, one after another,

5    probably three times," and when she refused, he restrained her.  Ex. C, Henshaw Dep. at

6    93:9-11.  Plaintiff contends that she did not know what Officer Frederick said and that "he

7    said something, but [she] didn't quite know."  Opp'n at 7 (citing Pl.'s Ex. 5, Fowler Dep.

8    43:11-24 & 44: 17-21).  That she did not hear or understand what Officer Frederick said

9    does not create a genuine dispute of material fact that he ordered her to remain in the car

10   and return to the car once she exited, given the undisputed testimony to that effect by

11   Officer Frederick and Henshaw.[9]  This is because the inquiry here focuses on the known

12   facts that would give an officer probable cause to believe Plaintiff violated Penal Code

13   section 148(a)(1).  Plaintiff also argues that 7-8 seconds – the time that elapsed from her

14   exiting the vehicle to when Officer Frederick placed his hand on wrist in an effort to

15   restrain her – did not allow her the necessary time to comply.  Opp'n at 16.  Plaintiff's

16   argument about insufficient time to comply once Plaintiff exited the vehicle is belied by

17   the totality of the circumstances, *Dubner*, 266 F.3d at 964, including the multiple

18   commands to remain in the vehicle that Officer Frederick issued to Plaintiff in the 20 or

19   more seconds prior to her getting out of the vehicle.  Ex. B., MVARS Video (7:30-7:56);

20   Ex. D, Fowler Dep. 49:2-25, 50:24-51:2; Ex. A, Frederick Dep. 51:12-16.  These

21   commands alone were sufficient to constitute a lawful order that Plaintiff was required to

22   obey, and one that she ultimately did not.

23          Plaintiff additionally argues that her disability stemming from a stroke negates

24   Officer Frederick's probable cause to arrest her.  Henshaw testified that once Officer

25

26   [9]      Likewise, Henshaw's testimony that he never heard Plaintiff say anything, "curse"

27   or "yell" at Officer Frederick when she was seated in the vehicle or when she exited,
     Opp'n at 7 (citing Pl.'s Ex. 3, Henshaw Dep. 38:3-39:24, 89: 6-16, 91:12-19), does not
     create a genuine dispute of material fact with respect to whether Officer Frederick ordered

28   her to remain in and then return to the vehicle.

United States District Court
Northern District of California

1    Frederick began to restrain Fowler, Henshaw yelled to Officer Frederick that "[s]he

2    doesn't understand your instructions.  She has had a stroke."  Ex. C., Henshaw Dep. 47:5-

3    16.  The traffic stop occurred at night; to the left of the vehicle was a freeway with traffic,

4    and to the right was an embankment.  If Plaintiff could not understand instructions or had a

5    diminished ability to understand her surroundings, Officer Frederick would have had all

6    the more reason to require her to stay in the vehicle to prevent her from being hit by traffic

7    or otherwise injuring herself.  At any rate, Plaintiff cites to no authorities that would

8    suggest that an alternative or innocent explanation for failure to take instructions negates

9    an officer's probable cause to believe that an individual has failed to comply with an order

10   to remain in the vehicle during a traffic stop and refrain from walking on a freeway.  *Cf.*

11   *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer

12   has a reasonable basis for believing there is probable cause, he is not required to explore

13   and eliminate every theoretically plausible claim of innocence before making an arrest.").

14   Henshaw's statements about Plaintiff's disability and inability to take instructions were not

15   readily verifiable at the moment that she refused to stay in the vehicle or return to the

16   vehicle.  Moreover, such statements would not overcome what Officer Fredrick previously

17   observed nor chip away at the fair probability that Plaintiff had refused to comply with his

18   instructions.

19           Plaintiff also argues that genuine issues of material fact preclude summary

20   judgment because she contends Officer Frederick lacked reasonable suspicion to pull over

21   Henshaw, rendering the underlying stop illegal, and thus vitiating Officer Frederick's

22   ability to issue her lawful orders that she was required to obey under Penal Code section

23   148(a)(1).  A police officer "may order a passenger who voluntarily gets out of a *lawfully*

24   stopped vehicle back into the automobile without violating the passenger's Fourth

25   Amendment rights" because of the importance of the "officer's discretion to control the

26   situation as he or she deems necessary to ensure the safety of the officer and the vehicle

27   occupants."  *United States v. Williams*, 419 F.3d 1029, 1030-31 (9th Cir. 2005) (emphasis

28   added); *see also Young v. County of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011)

1   (holding "that a police officer issuing a traffic citation does not violate the Fourth

2   Amendment by ordering a driver to reenter his vehicle for the duration of a traffic stop"

3   and concluding that the officer's "order that [the driver] reenter his vehicle was a lawful

4   one that, under § 148(a)(1), [the driver] was required to obey.")  Plaintiff contends that

5   *Williams* and *Young* predicate the ability of a police officer to order a passenger to remain

6   in or return to his or her vehicle on the vehicle being lawfully stopped in the first instance.

7   Accordingly, Plaintiff contends that in this § 1983 action, because the underlying traffic

8   stop was illegal, she was not required to obey Officer Frederick's orders to remain in and

9   return to the vehicle during the traffic stop, negating any probable cause that existed for

10  arresting Plaintiff for resisting, obstructing, or disobeying these orders under Penal Code

11  section 148(a)(1), and thus rendering her subsequent arrest a violation of the Fourth

12  Amendment.

13          These disputed facts relate to whether Officer Frederick had reasonable suspicion to

14  pull over Henshaw's vehicle for a DUI investigation in the first instance.  *Liberal v.*

15  *Estrada*, 632 F.3d 1064, 1077 (9th Cir. 2011).  Officer Frederick testified that he suspected

16  Henshaw may have been under the influence when he observed the vehicle make an erratic

17  turning movement and weave within the lane, touching the limit lines on both sides of the

18  roadway.  Henshaw acknowledged he was driving in an unfamiliar car for the first time

19  and admitted that he could have hit the lane lines because he was distracted by a phone

20  call.  He also testified, however, that it was unlikely and impossible that he weaved,

21  lurched, or crossed the centerline as Officer Frederick described.  Thus, when viewed in a

22  light most favorable to Plaintiff as the nonmoving party, this evidence creates a genuine

23  dispute of fact as to whether Officer Frederick had reasonable suspicion to stop Henshaw

24  to investigate whether he was driving under the influence.  *Anderson*, 477 U.S. at 255.

25          The Court finds, however, that this dispute about the legality of the underlying stop

26  is not *material* to whether Officer Frederick is entitled to qualified immunity.  As noted by

27  the Ninth Circuit, "[i]t is sufficient for a valid conviction under [Penal Code section]

28  148(a)(1) that at some time during a 'continuous transaction' an individual resisted,

17

1   delayed, or obstructed an officer when the officer was acting lawfully.  It does not matter

2   that the officer might also, at some other time during that same 'continuous transaction,'

3   have acted unlawfully."  *Hooper*, 629 F.3d at 1132.  Thus, even if Officer Frederick acted

4   unlawfully in pulling over the vehicle, he acted lawfully when he ordered Plaintiff to

5   remain in and then return to the vehicle during the course of the same investigatory stop.

6   Therefore, Officer Frederick had probable cause to arrest Plaintiff when she resisted,

7   delayed, and obstructed him in the attempt to discharge his duties.

8          Nor does the Fourth Amendment's exclusionary rule, oftentimes referred to as the

9   "fruit of the poisonous tree doctrine," *see United States v. Crews*, 445 U.S. 463, 469

10  (1980), invalidate the ability of Officer Frederick to order Plaintiff to remain in or return to

11  the vehicle during a traffic stop, even if the underlying stop lacked reasonable suspicion or

12  probable cause.  *See* Opp'n at 15.  This is so because the exclusionary rule does not apply

13  in the context of a civil suit under § 1983.  *See Wren v. Towe*, 130 F.3d 1154, 1158 (5th

14  Cir. 1997); *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) ("We find no

15  case in which the [fruit of the poisonous tree] doctrine has been successfully invoked to

16  support a § 1983 claim, and we see no reason why it should be."); *Hector v. Watt*, 235 F.3d

17  154, 158-60 (3d Cir. 2000); *Smith v. Kelly*, No. C11-623RAJ, 2013 WL 5770337, at *9-14

18  (W.D. Wash. Oct. 24, 2013) (recognizing that while the Ninth Circuit has never directly

19  addressed the question, every circuit to consider the issue, and the overwhelming majority

20  of district courts – including in the Ninth Circuit – have held that the exclusionary rule

21  does not apply to civil suits under § 1983).  Thus, even if the underlying stop was illegal,

22  the exclusionary rule would not render illegal Officer Frederick's arrest of Plaintiff under

23  Penal Code section 148(a)(1).

24         Accordingly, the Court concludes that under the totality of the circumstances,

25  Officer Frederick had probable cause to arrest Plaintiff for a violation of Penal Code

26  section 148(a)(1) because, based on the facts known to Officer Frederick at the time, there

27  was a fair probability that she willfully resisted, delayed, and obstructed Officer

28  Frederick's attempt to discharge his duties during the investigative stop.  Plaintiff has

United States District Court
Northern District of California

United States District Court
Northern District of California

1    failed to otherwise show a violation of her constitutional rights with respect to this claim,

2    and thus Officer Frederick is entitled to qualified immunity.

3                **2.    Nor did Officer Frederick's arrest of Plaintiff under California
                 Penal Code section 148(a)(1) violate Plaintiff's "clearly
4                established" rights.**

5         As discussed above, the Court finds that there is no constitutional violation arising

6    from Officer Frederick's arrest of Plaintiff under Penal Code section 148(a)(1).  The Court

7    adds that even if Plaintiff is correct that Officer Frederick had no legal basis to order her to

8    remain in or return to the vehicle, and therefore no basis to arrest her under Penal Code

9    section 148(a)(1) for disobeying, Plaintiff has failed to meet her burden of showing that

10   "every reasonable official would have understood that" Officer Frederick would be

11   violating her rights when he arrested her under Penal Code section 148(a)(1) when she

12   refused to remain in or return to the vehicle during his DUI investigation of the driver of

13   the vehicle on a freeway, especially in light of *Williams* and *Young*, and the officer safety

14   rationale identified by that line of cases.  *Reichle*, 132 S. Ct. at 2093.  Thus, because such a

15   right was not "clearly established" at the time of the incident, Officer Frederick would be

16   entitled to qualified immunity on this ground as well.

17

18               **3.    Officer Frederick had probable cause to arrest Plaintiff for public
                 intoxication under California Penal Code section 647(f).**

19        Plaintiff also argues that she was not intoxicated and that Officer Frederick arrested

20   her for a violation of California Penal Code section 647(f) (public intoxication) in an

21   attempt to manufacture probable cause.  Opp'n at 10.  Her blood alcohol content was .052

22   and .048; for perspective, in California, it is unlawful for a person who has 0.08 percent or

23   more, by weight, of alcohol in his or her blood to drive a vehicle.  *See* Cal. Veh. Code §

24   23152.  The subjective reason that Officer Frederick arrested Plaintiff, however, is

25   irrelevant so long as the facts known to the arresting officer are sufficient to create

26   probable cause.  *See Devenpeck*, 543 U.S. at 153; *Tatum*, 441 F.3d at 1094.  Here, Plaintiff

27   repeatedly refused commands, physically resisted Officer Frederick's attempt to control

28   her, attempted to run away from Officer Frederick along the side of the freeway.  Henshaw

United States District Court
Northern District of California

told Officer Frederick that Plaintiff drank wine that evening, and the presence of alcohol in her blood was confirmed by subsequent testing.  Based on these known and undisputed facts, there was a fair probability, under the totality of the circumstances, that Plaintiff was in a "public place under the influence of intoxicating liquor . . . in a condition that . . . she [was] unable to exercise care for . . . her own safety," in violation of Penal Code section 647(f).  Thus, probable cause existed for her arrest, negating her claim for unlawful arrest.

Plaintiff argues that during the depositions of CHP Officer Frederick, CHP Lieutenant Gregory Baarts, and retired CHP Officer Brendan Bach, these deponents "could not give a straight answer to the number of individuals that they have arrested with a BAC below .08," and Lieutenant Baarts testified that in his "personal experience or personal opinion you've got to be falling down drunk before I take you to jail for being 647(f) or you've got to be argumentative due to your level of intoxication or uncooperative due to your level of intoxication to be taken to jail for 647(f)."  Opp'n at 10 & Pl.'s Ex. 4, Lt. Baarts Dep. 73:5-16.  Argument about the deponents' lack of definitive answers and the opinion testimony of Lieutenant Baarts, however, does not create a genuine dispute of material fact regarding the known facts available to Officer Frederick at the time. Accordingly, Plaintiff has failed to show a constitutional violation arising from her arrest for public intoxication, and Officer Frederick is entitled to qualified immunity on this claim.

> **4.      The Americans with Disabilities Act does not deprive Officer Frederick of qualified immunity for arresting Plaintiff and the Court denies Plaintiff's request for leave to amend this claim.**

Plaintiff argues, without citation to authorities, that the Americans with Disabilities Act ("ADA") bars qualified immunity for a Fourth Amendment claim because Officer Frederick knew or should have known he would be violating the ADA by arresting Plaintiff.  Opp'n at 19-22.  During oral argument, Plaintiff requested leave to amend the complaint to add an ADA claim supporting this position in light of the Ninth Circuit's recent decision in *Sheehan v. City and County of San Francisco*, No. 11-16401, 2014 WL 667082, at *16 (9th Cir. Feb. 21, 2014), which held that Title II applies to arrests given

United States District Court
Northern District of California

1    that the ADA applies broadly to police "services, programs, or activities."  The Court

2    ordered supplemental briefing on whether leave to amend should be granted.  Docket No.

3    68.

4           The Court construes this opposition argument and Plaintiff's request for leave to

5    amend as part of the same argument.  The Court rejects it, and DENIES Plaintiff's request

6    for leave to amend a claim that Defendants violated Plaintiff's rights under the ADA, 42

7    U.S.C. § 12132, because of futility.  *See Lockheed Martin Corp. v. Network Solutions, Inc.*,

8    194 F.3d 980, 986 (9th Cir. 1999) (establishing that courts look to four factors when

9    reviewing a decision whether to permit an amendment: (1) bad faith on the part of the

10   plaintiffs; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the

11   proposed amendment).  Here, such an amendment would be futile as to Defendant CHP

12   because the State cannot be liable to Plaintiff for money damages under § 1983 for a

13   violation of the ADA because § 1983 does not apply to states or state officials acting in

14   their official capacity.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

15   Nor can Plaintiff assert a § 1983 claim against Officer Frederick as a state official in his

16   individual capacity under Title II of the ADA.  *See Vinson v. Thomas*, 288 F.3d 1145, 1156

17   (9th Cir. 2002) (holding that "a plaintiff cannot bring an action under 42 U.S.C. § 1983

18   against a State official in her individual capacity to vindicate rights created by Title II of

19   the ADA or section 504 of the Rehabilitation Act.").  Even if such a claim were possible,

20   Officer Frederick would be entitled to qualified immunity because a violation of Plaintiff's

21   rights under the ADA arising from her arrest was not clearly established as of October 20,

22   2011.  The Ninth Circuit did not publish *Sheehan* until February 21, 2014, and as noted by

23   the *Sheehan* court, the Ninth Circuit had not previously addressed whether the ADA

24   applies to arrests and "the question is a matter of some disagreement among other

25   circuits."  2014 WL 667082, at *16.  Thus, in 2011, it would not have been "sufficiently

26   clear that every reasonable official would have understood that" arresting Plaintiff for a

27   violation of Penal Code sections 148(a)(1) and 647(f), based on the facts of the case,

28   would have violated her rights under Title II of the ADA.  *Reichle,* 132 S. Ct. at 2093.

21

United States District Court
Northern District of California

Consistent with the above, none of the authorities cited by Plaintiff involved a Title II claim under § 1983 against the State or state officer in his or her individual capacity; they involved claims against a municipality or its officers.[10]  Supp. Opp'n at 5-8.  Thus, Officer Frederick would be entitled to qualified immunity on any ADA claims arising from Plaintiff' arrest.[11]

Accordingly, granting leave to amend an ADA claim would be futile.  Additionally, while there is no indication of bad faith or undue delay on the part of Plaintiff, the Court notes that because discovery closed on February 3, 2014, and trial is set for May 20, 2014, amending the complaint to add a new substantive theory of liability after the close of discovery and on the eve of trial, especially where the amendment would be futile, would unduly prejudice Defendants.  Therefore, the Court DENIES leave to amend an ADA claim, and GRANTS summary judgment to Officer Frederick on the First Cause of Action for a violation of § 1983 for unlawful arrest on the ground of qualified immunity.

**B.      Officer Frederick Is Entitled to Immunity Under California Penal Code Section 847(b) on the Unlawful Arrest Claims Under the Bane Act.**

Plaintiff alleges in her Third Cause of Action that Officer Frederick's unlawful arrest violated her rights under California's Bane Act, California Civil Code section 52.1.  *See* SAC ¶¶ 53-59.  Defendants move for summary judgment on this claim on the basis that Officer Frederick is entitled to immunity pursuant to Penal Code section 847(b).  The

---

[10] *See, e.g.*, *Sheehan*, 743 F.3d at 1231(ADA claim against municipality or its officers, not state or state officers in individual capacities); *Gohier v. Enright*, 186 F.3d 1216, 1217 (10th Cir. 1999) (same); *Waller ex rel. Estate of Hunt v. Danville, VA*, 556 F.3d 171 (4th Cir. 2009) (same); *Tucker v. Tennessee*, 539 F.3d 526 (6th Cir. 2008) (same); *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002) (same); *Patrice v. Murphy*, 43 F. Supp. 2d 1156, 1157 (W.D. Wash. 1999); *Lewis v. Truitt*, 960 F. Supp. 175 (S.D. Ind. 1997); *Barber v. Guay*, 910 F. Supp. 790 (D. Me. 1995) (same); *Jackson v. Inhabitants of Town of Sanford*, No. CIV. 94-12-P-H, 1994 WL 589617 (D. Me. Sept. 23, 1994).

[11] Plaintiff also directs the Court to CHP training materials that purport to prepare CHP officers for encounters with members of the public who may be disabled.  *See* Opp'n at 20-22 (citing Pl.'s Ex 16, CHP LD-37, Pl.'s Ex. 17, Training Slides).  The Court finds that these training materials do not alter the conclusion that Officer Frederick would be entitled to qualified immunity because the right was not clearly established at the time of the alleged violation.

United States District Court
Northern District of California

1   Bane Act provides a civil remedy for persons whose exercise of constitutional rights has

2   been interfered with by "threats, intimidation or coercion."  Cal. Civ .Code § 52.1;

3   *O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 501 (2006); *Venegas v. Cnty. of Los*

4   *Angeles*, 32 Cal. 4th 820, 843 (2004) (holding that plaintiffs sufficiently alleged

5   unconstitutional search and seizure violations under the Bane Act without need to allege

6   that defendants acted with discriminatory animus or intent).

7        Penal Code section 847(b), however, provides that there "shall be no civil liability

8   on the part of, and no cause of action shall arise against, any peace officer . . . acting within

9   the scope of his or her authority, for false arrest" where "the arrest was lawful, or the peace

10  officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful."

11  Cal. Penal Code § 847(b)(1).  While a police officer is not granted governmental immunity

12  for unlawful arrest or imprisonment, he or she shall not be civilly liable where

13  "[r]easonable cause to arrest exists when the facts known to the arresting officer would

14  lead a reasonable person to have a strong suspicion of the arrestee's guilt."  *O'Toole*, 140

15  Cal. App. 4th 488, 510-11 (2006) (holding that officer had reasonable cause to believe

16  protestor violated Penal Code section 148(a)(1) when he continued to distribute materials

17  on campus without required permit and refused to follow officers directions to stop).

18        As discussed above, Officer Frederick had probable cause to arrest Plaintiff for

19  violating Penal Code sections 148(a)(1) (willfully resisting, impeding, and obstructing the

20  exercise of a lawful duty) and 647(f) (public intoxication).  It follows that Officer

21  Frederick therefore had reasonable cause to believe arresting Plaintiff was lawful because,

22  based on the above-discussed undisputed facts, a reasonable person would have a strong

23  suspicion of the Plaintiff's guilt.  *O'Toole*, 140 Cal. App. 4th at 510-11.  Accordingly,

24  Officer Frederick is entitled to Penal Code section 847(b)(1) immunity arising from his

25  reasonable beliefs, and the Court therefore GRANTS summary judgment to Officer

26  Frederick on this Bane Act unlawful arrest claim.  Plaintiff's Bane Act claims with respect

27  to the alleged use of excessive force remain.

28

United States District Court
Northern District of California

**C.      Officer Frederick Is Entitled to Summary Judgment on Damages from Plaintiff's Unlawful Arrest Claim.**

Plaintiff alleges that she suffered humiliation and embarrassment as a result of her unlawful arrest (First Cause of Action, SAC ¶ 40).  Defendants moved for summary judgment on reputational harm damages arising from Plaintiff's alleged unlawful arrest. Plaintiff concedes that her "claim for harm to reputation is not based upon defamation and unlawful statements that Defendants may have made," but rather for humiliation and embarrassment that is intertwined in her prayer for general damages.  Opp'n at 24. Because Officer Frederick is entitled to qualified immunity, and therefore summary judgment, on Plaintiff's § 1983 claim for unlawful arrest, he is protected from liability for civil damages, including for any humiliation or embarrassment Plaintiff experienced as a result of her lawful arrest.  The Court DENIES Plaintiff's request for leave to plead additional information regarding this claim as futile given that Officer Frederick is entitled to qualified immunity.[12]

**D.      Plaintiff Stipulates To Summary Adjudication of the Employment Negligence Claim Against CHP.**

The Court GRANTS summary judgment on Plaintiff's two employment negligence sub-claims against the CHP for "failure to properly train, supervise, and discipline employees including the individual defendants," SAC ¶ 69(e), and the "negligent hiring, retention, and assignment of CHP" Officer Frederick, *id*. ¶ 69 (f), because Plaintiff stipulated to Defendants' request for partial summary adjudication of these claims.  *See* Opp'n at 25:22-23.  The negligence claims in the Fifth Cause of Action, identified at SAC

---

[12] The Court notes that this determination is without effect on Plaintiff's request for damages for humiliation and embarrassment arising from Officer Frederick's alleged excessive force (Second Cause of Action, SAC ¶ 50), and for humiliation arising from Officer Frederick's alleged battery (Fourth Cause of Action, SAC ¶ 63).  As compensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances, whether or not a plaintiff submits evidence of economic loss or mental or physical symptoms stemming from the humiliation, *Johnson v. Hale*, 940 F.2d 1192, 1193 (9th Cir. 1991), and Defendants did not move for summary judgment on the Second or Fourth Causes of Action, Plaintiff may seek damages on these claims at trial.

¶¶ 69(a)-(d) remain.

## IV.    CONCLUSION

For the reasons discussed above, the Court:

1) GRANTS summary judgment to Officer Frederick with respect to the First Cause of Action for unlawful arrest, in violation of 42 U.S.C. § 1983, on the ground that he is entitled to qualified immunity;

2) GRANTS summary judgment to Officer Frederick with respect to the Third Cause of Action for unlawful arrest, in violation of the Bane Act, California Civil Code § 52.1, on the ground that he is entitled to immunity under California Penal Code § 847(b);

3) GRANTS summary judgment to Officer Frederick with respect to damages arising from Plaintiff's lawful arrest;

4) GRANTS summary judgment to CHP with respect to claims for employment negligence in the Fifth Cause of Action, as set forth at SAC ¶ 69(e),(f).

**IT IS SO ORDERED.**

Dated:   04/25/14

THELTON E. HENDERSON
United States District Judge